OPINION..
Richardson, J.,
delivered the opinion of the court:
The claimant had a contract with the ConTmissioners of the District of Columbia, made by an extension in September, 1875, of a contract entered into in 1872. between the Board of Public Works and one Follansbee, who had assigned it to the claimant.
Two separate pieces of work were by the contract to be done by the claimant and were done by him. First, to construct an inlet and gravel pit; and, second, to construct a brick sewer.
For the gravel-pit work there was found to be due him on settlement a balance of $4,274.15, payable March 1, 1876, and that amount, it is conceded by the counsel for the defendant, is still due and unpaid, as shown in finding II.
The only controversy in the case arises upon the counterclaim or' set-off filed by the defendant to recover $11,437.76, alleged to have been overpaid to the claimant through the Board of Audit for sewer work. The facts in relation to this item appear to be these:
The claimant received partial payments as the work progressed, and at its completion a detailed voucher was made out in November, 1875, by the assistant engineers of the District, which allowed to claimant for the whole work $50,344.64. This voucher was certified to as follows:
I have carefully examined the account, & find the prices according to contract, & the computations correct.
Nov. 11,1875. B. ObRtusy,

Assistant Engineer.

Approved, subject to future inspection of the work.
Nov. 12, 1875. K. L. Hoxib,
Lieut. Eng. U. S. A., Engineer for JD. C.
*576 Thus certified to, the voucher was transmitted to the Board of Audit, and the balance due, after deducting previous partial payments, was paid in the bonds issued by the sinking-fund commissioners, under the Act of Congress Jtme 20,1874 (18 Stat. L., 116).
This voucher first sets out the prices established by the early order of the Board of Public Works, and then closes with an item for “main sewer rates on items A, B, C, & D,” $11,437.76.
This last item, now the subject of controversy between the parties, was added by the engineers to bring the prices of the work up to contract rates, as they construed the contract, and the question is whether or not they were correct in their construction.
The Board of Public Works, in 1871, 1872, and 1874, by entries in their records, had established what were called “ Board rates ” for work such as that done by the claimant, and those were the prices first stated in the voucher; but after those prices were thus established, the credit of the District becoming impaired on account of the magnitude of the work undertaken. by the Board of Public Works, and the indebtedness which was rapidly increasing, and other causes, the Board entered into contracts with other parties for similar work at higher' prices, and actually paid higher rates up to the time of its abolition, June 20, 1874.
The engineers of the District construed the claimant’s contract with the Commissioners to mean that he was to have the benefit of the prices actually paid to other parties, where they differed from those previously established by orders which were not followed in practice. The following is the provisions of the contract on the subject:
It is further agreed that the said Henry Gantz shall receive the prices established and paid by the Board of Public Works for main sewers, provided that payment be made in the bonds issued by the sinking-fund commissioners of the District of Columbia, under &■ by virtue of section 7 of the act of Congress approved June 20, 1874, which bonds shall be accepted and received at their par value.
As the prices established by the early orders and' the prices actually paid to subsequent contractors were not identical, it was to be determined which one of the two rates was intended by the parties and was to lie allowed to the claimant.
The engineers gave the claimant the benefit of the later *577 and larger prices and made out the‘voucher on that basis. Whether this was done because they regarded those iirices as practically established by actual' payments, or because they adopted the construction most for the advantage of the claimant, on the general ground that when' the terms of a written contract are ambiguous and cannot be made clear by the context they may be taken most strongly against the promissor, especially when such contract waá prepared by the latter, we are of opinion that they were notin error, and that the voucher they gave was correct. (Noonan v. Bradley, 9 Wall., 407.)
was reached by first taking the “ established ” prices and then adding thereto percentages to bring up the compensation to prices subsequently paid by the Board, or that such percentages were called for “contingencies” and “discount,” is immaterial. Whatever arithmetical processes were employed, and whatever designations, whether right or wrong, were used in the voucher, the result was substantially according to contract.
The claimant having been paid nothing more thsln he was entitled to, the defendant cannot recover on its counter-claim.
The judgment of the court is that the claimant recover to the use of James A. Boyd the sum of $4,274.15, as due and payable March 1, 1876, and that the the defendant’s counter-claim and set-off be dismissed.